## RALPH K. SAFFORD *vs.* MORRIS METAL PRODUCTS COMPANY.

Third Judicial District, New Haven, June Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

In construing a written agreement, evidence of the surrounding circumstances is admissible, including the acts and conduct of the parties themselves disclosing their own practical construction of the writing.

An agreement in the name of a corporation by its vice-president, to employ the plaintiff for at least three years "as secretary of the above company or some superior capacity as may arise," is not one to make the plaintiff secretary of the corporation in violation of the statute (§ 3515) vesting the power of choosing a secretary in the directors of the corporation, since all the plaintiff could require under this agreement would be a high grade position, not necessarily that of secretary. This interpretation is not merely the only reasonable one attributable to the language of the writing, but in the present case was made imperative by the practical construction put upon it by the parties themselves; since it appeared that the plaintiff was given a position other than that of secretary, to which he made no objection, and that he was paid the specified salary for three months.

In an action to recover damages for the breach of such a contract by the employer, the plaintiff is entitled to the salary due at the date of his discharge, and, as damages, to a sum equal to the balance of the stipulated salary for the full term of his employment, less such amount, if any, as the defendant may show the plaintiff had earned, or by the exercise of due diligence could have earned, in some other capacity.

It is within the discretion of the trial court to admit a letter in evidence, before proof of the corporate authority of the writer has been shown.

A paragraph of a letter not mentioned in the pleadings nor relied upon in evidence, does not render the rest of the letter, which forms the basis of the plaintiff's case, inadmissible. This additional paragraph is properly treated as a separate independent matter.

On his cross-examination the plaintiff admitted he had sued the vice-president of the defendant company in Massachusetts, and was then asked if it was "on this claim." Upon objection the question, claimed to affect the plaintiff's credibility, was excluded. *Held* that the fact sought to be elicited, if true, was of so little, if any,

evidential value in this case, that the exclusion of the question was within the discretion of the court.

Argued June 7th—decided August 4th, 1922

ACTION to recover damages for breach of a contract of employment, brought to and tried by the Superior Court in Fairfield County, *Haines, J.;* facts found and judgment rendered for the plaintiff for $11,804, and appeal by the defendant. *No error.*

*Carl Foster,* for the appellant (defendant).

*William H. Comley, Jr.,* for the appellee (plaintiff).

CURTIS, J.  In May, 1920, the defendant company was engaged in organizing a staff of employees for the prosecution of its business in Bridgeport, and its vice-president and director, A. W. Morris, acting for the defendant in employing such staff, on May 20th, 1920, wrote to the plaintiff as follows: "Pending the drawing of a more formal agreement please accept this letter as an agreement to engage you for a term of at least three years at a salary of at least $6000.00 as Secretary of the above Company or some superior capacity as may arise—you to report for duty before July 1st, 1920. Morris Metal Products Corp., by A. W. Morris." The plaintiff was then employed and resided in Springfield, Massachusetts, and thereafter, in pursuance of said letter and with the knowledge of Morris, moved his family to the vicinity of Bridgeport, and on June 1st, 1920, reported to the defendant company at its plant and entered upon the duties of his employment.

The fact, and the terms, of the plaintiff's employment were reported to the directors of the defendant by vice-president Morris before June 1st, 1920. With the knowledge of the directors and of vice-president

Morris, the plaintiff continued in this employment during the months of June, July, August and September and until the 5th day of October following, and received payment from the defendant company at the salary of $500 per month, for the months of June, July and August.

At no time after the letter of May 20th, did the directors of the defendant, of whom vice-president Morris was one, take any formal action upon the plaintiff's employment or in regard to making him the secretary or other officer of the corporation.

On October 5th, 1920, the defendant notified the plaintiff of his discharge in a letter signed by its then president in the following terms: "I was astonished to learn that on Saturday last you opened a letter addressed to Mr. Newman, which contained salary checks, and assumed to hand them over to the payees. This action, coupled with your continued absence from the office, and a series of events unnecessary to dwell upon, makes your continued employment by this Company impossible. You will, therefore, consider yourself discharged. Yours truly, Morris Metal Products Corporation, A. W. Morris, President."

The charges made in this letter in justification of the discharge, the court found not proved.

This action was brought to recover damages for the breach of a contract of employment and salary to October 5th, 1920. The court held that under the above facts there was a contract of general employment of the plaintiff on the terms set forth in the letter of May 20th, 1920.

The defendant claims that under the above facts there was no contract of general employment, on the terms of the letter of May 20th, but merely an employment at will, and that the letter of May 20th was an attempt by Morris to contract to make the plaintiff

secretary of the company, which is an office of the company that can only be filled through the statutory method, as provided in General Statutes, § 3515, which reads: "The directors of every corporation shall choose from among their number a president and shall appoint a treasurer, a secretary and such other officers as the by-laws shall prescribe." If the terms of the letter of May 20th and the facts disclosed no other purpose than an attempt by the vice-president to make, by contract, the plaintiff secretary of the company, the defendant's claim would be well taken. We think the court correctly held that the letter of May 20th, under the facts, could not properly be held to be an attempt to make by contract the plaintiff secretary of the company.

In interpreting the terms of the letter of May 20th, the court properly considered the evidence of the facts attending and surrounding the transaction, which put the court in the situation of the parties at the time, and also properly considered the evidence, disclosing the practical construction of the contract put upon it by the conduct and acts of the parties. In *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 479, 35 Atl. 521, we say that the construction of a contract in writing is a question of law for the court, and further, in effect, that such interpretation is none the less a question of law because the construction may be aided by the use of extrinsic evidence, including the practical construction put upon the contract by the conduct and acts of the parties. The court by the aid of extrinsic evidence may put itself in the situation of the parties and look at the contract from their standpoint. *Smith* v. *Faulkner*, 78 Mass. (12 Gray) 251, 255.

The terms of the letter of May 20th; in relation to the nature of the duties of the plaintiff in the defendant's employ, says, in effect: we agree to engage you as

secretary of the company or in some superior capacity (that is, in some high grade position). Under this agreement in the alternative, the plaintiff could not claim a breach of contract if the company through its directors did not appoint him secretary. All he could require would be a high grade position, and whatever position the defendant gave him satisfied the terms of the agreement so long as the plaintiff was satisfied to fill it. When the plaintiff moved to the vicinity of Bridgeport from Springfield, and in pursuance of the direction in the letter of May 20th reported for duty at the defendant's plant before July 1st, he was given a position at the plant, to which he made no objection, and was paid for three months the salary specified in the letter. He was not appointed secretary and he made no objection to this. Therefore by the practical construction of the contract of employment, as shown by the conduct and acts of the parties, the employment that he was given satisfied the plaintiff as being a position of high grade work to which he was entitled, and the payment of the salary specified in the letter indicated that the company deemed his employment as that provided for by the terms of the letter.

In the light of these circumstances the terms of the letter of May 20th could not reasonably be construed as providing for anything except general employment for three years at a salary of $6,000, holding out the possibility of an appointment as secretary, and agreeing to give him a "superior" position (that is, a position of high grade) in the company's plant. This construction, made so imperative by the practical construction put upon the contract by the conduct and acts of the parties, would be the only reasonable construction of the written terms of the agreement if considered independently of all extrinsic facts.

There were several rulings as to the admission of

evidence to which exception was taken by the defendant. Upon the trial, when the plaintiff offered in evidence the letter of May 20th, the defendant objected because the authority of A. W. Morris to enter into such a contract had not been established. The setting of this evidential question does not disclose what the state of the evidence then was as to the relation of A. W. Morris to the company. Assuming that no relation had been shown, the court could have in its discretion admitted the letter subject to proof of authority. The first paragraph of the finding is: "1. On May 18th, 1920, and for sometime prior thereto, the defendant, acting through its vice-president, A. W. Morris, was engaged in organizing a staff of employees for the prosecution of its business in Bridgeport." Thus the finding establishes the authority of Morris to make contracts of general employment at that time. When the letter of May 20th was offered in evidence, it disclosed that on the bottom of the same letter the following appeared: "It is further agreed that in consideration of your subscribing to $50,000 of bonds of M. M. P. Corp., you are to be elected a director of the Company. A. W. Morris." There is no reference to this agreement in the pleadings. The defendant pleaded a general denial to the allegation of a contract in the terms of the letter of May 20th as already set forth. The defendant objected to the introduction of the letter, because this addition made the letter proof of a different contract from that alleged. This claim was clearly unsound. In the light of the whole letter and the pleadings, this addition to the letter was properly considered by the court as an independent matter.

Upon cross-examination the plaintiff was asked if he had not brought a suit upon "this claim" in the courts of Massachusetts against A. W. Morris. He replied: "I have brought a suit against A. W. Morris in the

courts of Massachusetts." He was then asked: "(Q) On this claim, sir?" The plaintiff objected; the court excluded the question and the defendant, claiming that the fact if admitted affected the plaintiff's credibility, duly excepted. The fact, if true, that the plaintiff had sued Morris upon the same claim is obviously of so little, if any, evidential value under the issues of this case, that it was within the discretion of the trial court to exclude the inquiry as one seeking to bring out a fact too remote to be useful.

The defendant claimed that the court erred in awarding the plaintiff a greater sum than $5,685 as damages.

The action was begun October 5th, 1920, the day after his discharge. The plaintiff was not paid anything for his services after September 1st, 1920. After his discharge the plaintiff made diligent search for employment, but was not able to secure other employment until May 1st, 1921, when he secured employment at $200 per month, and this employment at that rate continued until the date of the judgment in this action, namely, February 5th, 1922. The court rendered judgment for damages for salary due at date of discharge, and also for the breach of contract. This was proper under the complaint. *Viall* v. *Lionel Mfg. Co.*, 90 Conn. 694, 698, 98 Atl. 329. The court arrived at the amount of its judgment by following the rule that prima facie the plaintiff was entitled to recover damages equal to the balance of the stipulated salary for the term of his employment, and that the defendant was entitled to mitigate or lessen such amount, by showing what sum, if any, the plaintiff had earned or by the exercise of due diligence could have earned in some other employment. The defendant seems to claim that the court could not so proceed, but must confine its estimate of damage to the period terminating at the date of judgment. This claim cannot be sustained.

The court followed the course established by the law of this State. *Grant* v. *New Departure Mfg. Co.*, 85 Conn. 421, 83 Atl. 212; *Viall* v. *Lionel Mfg. Co.*, 90 Conn. 694, 98 Atl. 329.

There is no error.

In this opinion the other judges concurred.